UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINDA K. BRANDT,

       Plaintiff,

v.                          CASE No. 8:11-CV-1455-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

_____

## O R D E R

The plaintiff in this case seeks judicial review of the denial of her claim for Social Security disability benefits.[*] Because the decision of the Commissioner of Social Security is supported by substantial evidence and the plaintiff has not shown any reversible error, the decision will be affirmed.

I.

The plaintiff, who was fifty-four years old at the time her insured status expired and who has a high school education with some college, has worked as a recreational facility attendant, a dispatcher, a bookkeeper, a

---

[*]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 8).

general office clerk, an EMT, a cashier, an ambulance driver, and a general manager (Tr. 40, 94-97). She filed a claim for Social Security disability benefits, alleging she became disabled due to constant pain in her back and legs (Tr. 189). Her claim was denied initially and upon reconsideration.

At her request, the plaintiff then received a de novo hearing before an administrative law judge. The law judge found that, through her date last insured of December 31, 2004, the plaintiff had severe impairments of lumbosacral spine degenerative disc disease, left knee degenerative joint disease, and obesity (Tr. 16). The law judge further found that the plaintiff's depression, degenerative joint disease of the right knee, gastroesophageal reflux disease (GERD), left breast cancer, obstructive sleep apnea, and osteoarthritis of the hands were non-existent or not severe during the relevant period (Tr. 17-18). He concluded that, through the date last insured, the plaintiff had the residual functional capacity (Tr. 18):

> to perform light work as defined in 20 CFR 404.1567(b), except: avoid climbing ladders exceeding 6 feet, as well as climbing ropes and scaffolds; for sedentary occupations only, had to be afforded a sit/stand/walk option permitting no more than five steps from the work station, a stretching maneuver, returning to the work station within one

> minute, performed not more than five times each
> hour; occasionally push and pull with her left lower
> extremity including the operation of pedals, unless
> the pedal required less than 5 pounds of force;
> avoid prolonged (6 hours of an 8 hour shift)
> exposure to temperatures of less than 40 degrees
> Fahrenheit, along with wetness or humidity; avoid
> unprotected heights; limited to occupations which
> allowed brief access to a restroom every 2 to 2 ½
> hours during the workday, and which could be
> performed wearing an incontinence protection pad.

The law judge determined that the plaintiff could have returned to her past

positions of cashier, office worker, recreational aide, dispatcher, bookkeeper,

and general manager (Tr. 23). Additionally, the law judge noted that the

vocational expert identified other jobs in the sedentary exertional level which

exist in significant numbers in the Florida economy that the plaintiff was

capable of performing during the relevant period (id.). Accordingly, the law

judge ruled that the plaintiff was not disabled (Tr. 24). The Appeals Council

let the decision of the law judge stand as the final decision of the

Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a

claimant must be unable "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). In this case, the plaintiff must show that she became disabled before her insured status expired on December 31, 2004, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary

conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff attacks the law judge's decision on two grounds. The relevant evidence on those challenges is that which has a bearing on the plaintiff's condition between August 1, 2001, the alleged disability onset date, and December 31, 2004, the plaintiff's date last insured. Much of the evidence in the record either pre-dates or post-dates the pertinent period. That evidence is relevant only to the extent that it sheds light on the plaintiff's condition during the period at issue. The relevant evidence does not sustain the plaintiff's challenges to the law judge's decision.

The plaintiff first asserts that the law judge's residual functional capacity finding is not supported by substantial evidence (Doc. 11, pp. 13-17). In particular, the plaintiff argues that the "ALJ improperly relied on selective portions of the records in assessing [the plaintiff's] back impairments, GERD, and sleep apnea. When the record is reviewed as a whole, it shows impairments that would not allow the kind of lifting, standing and walking that the ALJ found in this case" (id., p. 17).

The plaintiff contends that her back problems do not support the law judge's residual functional capacity finding (id., pp. 14-15). In order to

prevail, however, the plaintiff must show that she had functional limitations from her back problems that were not included in the law judge's determination of the plaintiff's residual functional capacity. In this respect, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005); McCruter v. Bowen, supra.

Although the plaintiff makes the conclusory assertion that "[s]ubstantial evidence does not support the ALJ's finding in this case that Ms. Brandt could lift 20 pounds occasionally and 10 pounds frequently, and stand and walk for 6 hours out of an 8 hour workday" (Doc. 11, p. 14), she makes no attempt to show that she has greater functional limitations than found by the law judge. Thus, not only does the plaintiff not point to any medical opinions stating greater functional limitations, she does not even assert unsupported functional limitations greater than found by the law judge.

And, as indicated, to obtain reversal of the law judge's finding, the plaintiff must demonstrate that the evidence compels a more restrictive residual functional capacity.

Furthermore, the plaintiff could not prevail even if she demonstrated that she could not lift twenty pounds occasionally and ten pounds frequently or stand/walk for six hours. Two of the jobs the law judge relied upon in determining that the plaintiff could return to prior work were sedentary jobs (dispatcher and bookkeeper) (Tr. 23). Those types of jobs limit lifting to ten pounds and only occasional walking and standing. 20 C.F.R. 404.1567(a). Moreover, the law judge added additional restrictions to sedentary work (Tr. 18). The plaintiff has not asserted, in even a conclusory fashion, that she cannot perform work with those limitations. This failure itself is enough to defeat the plaintiff's argument on this issue.

Nevertheless, it is appropriate to add that the plaintiff's contention that the evidence does not support the law judge's finding that the plaintiff can perform light work is unpersuasive. In support of her contention, the plaintiff points to the treatment notes of Dr. Kurt Barrett, a treating physician (Doc. 11, p. 15). In June 2001, Dr. Barrett indicated that the

plaintiff was experiencing "lots of joint pain" (id.; Tr. 381). Additionally, on August 20, 2003, Dr. Barrett reported that the plaintiff had low back pain which radiated down her left leg (Doc. 11, p. 15; Tr. 379). The plaintiff's reliance on these treatment notes is unavailing. First, the plaintiff fails to mention that Dr. Barrett's June 2001 report (which was prior to the alleged disability onset date) also states that the plaintiff "is better in many regards [than] she has been" (Tr. 381). Further, the August 2003 notation is merely a recitation of the plaintiff's subjective complaints (Tr. 379).

Regardless, the medical evidence of record provides substantial evidence supporting the law judge's residual functional capacity finding. For example, treatment notes from March 2003 indicate that, although the plaintiff experienced back pain, she was in no apparent distress and there was "[n]o deformity, or disability related to any joint" (Tr. 736-38). Records from Watson Clinic LLP also repeatedly reveal that the plaintiff was in no apparent or acute distress (see, e.g., Tr. 494, 503, 509). Further, on February 18, 2004, Dr. Ruben Saez noted that the plaintiff had "[n]o backaches or joint aches" (Tr. 501). In addition, as the law judge discussed, "in August 2003, Dr. Barrett found the claimant with exquisite, intense tenderness over the greater

trochanter of her left hip over her left buttock muscle, but negative straight-leg raise tests, and intact reflexes in her knees and ankles" (Tr. 19).

The plaintiff's activities of daily living also undermine her contention. At the hearing, the plaintiff testified that, during the relevant period, she was capable of preparing simple meals, taking care of her hygiene, doing the laundry, washing dishes, taking out the trash, driving, shopping, using a computer, reading, watching television, and doing cross-stitching (Tr. 73-78). In addition, the plaintiff indicated that she traveled round trip by car between Florida and Michigan, with each leg of the trip lasting three days and two nights (Tr. 78-79). The plaintiff also attended spring training baseball games, which involved sitting for approximately two to two and a half hours (Tr. 92). On October 10, 2002, she reported to a doctor that she was walking at least an hour per day (Tr. 747). Further, the plaintiff continued to work after her alleged onset date (Tr. 50), telling a doctor on March 24, 2003, that she worked from 10 A.M. to 4 P.M. (Tr. 739). Thus, the law judge could reasonably conclude that the plaintiff is not as disabled as she alleged.

Next, the plaintiff complains that the law judge did not assess all of the medical records regarding her GERD and sleep apnea (Doc. 11, pp. 15-

17). Thus, she contends that the law judge ignored records from 2000 to 2003 which "show failed treatment measures and several manifested symptoms of GERD," and he "only considered two treatment notes" for her sleep apnea (id.). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). In any event, contrary to the plaintiff's contention, the law judge's decision clearly shows that he considered the medical evidence concerning the plaintiff's GERD and sleep apnea, and he found those impairments to be nonsevere during the relevant period (Tr. 17, 19, 20).

The plaintiff also argues that her "GERD was not controlled by medications as the ALJ implied" (Doc. 11, p. 16). Thus, on November 29, 2003, Dr. Paul Guttuso, an urgent care doctor, indicated that the plaintiff's "[r]eflux [was] worsening on her current prednisone" (Tr. 715). That comment is taken out of context because the prednisone was for an itching problem, and not GERD (see Tr. 711). The plaintiff also notes that she continued to suffer from GERD symptoms after her date last insured (Doc. 11, p. 16). Dr. Barrett stated on June 8, 2006, that "her GERD symptoms

seem to be well suppressed on four Nexium a day" (Tr. 376). Moreover, as the law judge discussed, "the evidence fails to show significant treatment, such as hospitalization, surgery, or emergency care, for the claimant's GERD during the relevant period" (Tr. 19). In all events, the plaintiff fails to demonstrate how, if at all, her GERD created any functional limitations beyond the law judge's residual functional capacity during the relevant period. See Moore v. Barnhart, supra, 405 F.3d at 1213 n. 6; McCruter v. Bowen, supra.

Finally, the plaintiff asserts that she was not diagnosed with bilateral inferior turbinate hypertrophy, right nasal septal deviation, and bilateral nasal valve collapse until October 2004; and her sleep apnea symptoms were not resolved even after having surgery in 2005 (Doc. 11, pp. 16-17). However, there is no evidence that the plaintiff had any functional limitations during the relevant period from her nose condition. Further, as Commissioner correctly notes (Doc. 16, p. 11), no physician imposed limitations during the relevant period as a result of the plaintiff's sleep apnea.

Therefore, the law judge's residual functional capacity finding is well supported by the evidence of record. And the plaintiff has failed to

show that she had greater functional limitations than found by the law judge. Moreover, the plaintiff has not even argued that she has functional limitations that prevent her from returning to prior sedentary jobs.

As a second issue, the plaintiff argues that the law judge failed to evaluate properly certain medical opinions of record. This contention is also unpersuasive.

On June 25, 2007, Dr. Barrett, the plaintiff's prior treating physician, completed a form entitled "Medical Assessment of Ability to Do Work-Related Activities (Physical)" (Tr. 162-64). Dr. Barrett opined that the plaintiff's ability to lift/carry is impaired due to "advanced osteoarthritis of knees and low back by history" (Tr. 162). Based on his observation of the plaintiff's abnormal gait, Dr. Barrett also indicated that the plaintiff's ability to stand/walk was limited (Tr. 163). He further opined that the plaintiff's stiffness and difficulty ambulating affected her ability to sit (id.). In response to questions about how many pounds the plaintiff could lift/carry and how many hours the plaintiff could stand/walk, Dr. Barrett stated "unknown" (Tr. 162-63). With regard to postural activities, Dr. Barrett noted "I doubt [the plaintiff] could do any of these activities" (Tr. 163). Finally, Dr. Barrett

responded "unknown" to questions about physical functions (reaching, handling, feeling, pushing/pulling, seeing, hearing, and speaking) and environmental restrictions (Tr. 164).

Dr. Barrett supplemented his opinion by letter in March 2009 (Tr. 161). He explained that he had treated the plaintiff since September 1994, and "her physical limitations as of 12/31/04 were comparable to those, which [he] described on the 6/25/07 summary" (id.). Dr. Barrett also opined that the plaintiff "was unable to perform any work, eight hours per day five days a week as of 12/21/04" (id.).

Opinions from treating physicians should be given substantial or considerable weight unless there is good cause for not doing so. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The plaintiff complains that the law judge did not address Dr. Barrett's opinion or subsequent letter (Doc. 11, pp. 17-19). In this case, however, the lack of discussion was not error at all, or, at most, was harmless.

The form filled out by Dr. Barrett was devoid of any meaningful assessment of the plaintiff's functional limitations. Thus, he said "unknown" with respect to the activities of lifting/carrying (Tr. 162), standing/walking (Tr. 163), reaching, handling, feeling, pushing/pulling, seeing, hearing, speaking, and environmental restrictions (Tr. 164). He failed to answer the question of how many hours in an eight-hour workday the plaintiff could sit (Tr. 163). With respect to postural activities, he merely said, "I doubt she could do any of these activities" (id.).

The form therefore gave the law judge no substantive information to evaluate regarding the plaintiff's functional limitations. As indicated, the law judge is not required to discuss every piece of evidence in his decision. That principle is especially apt with respect to the hollow opinion provided by Dr. Barrett. Consequently, the law judge's failure to discuss that form is not error. In all events, the failure clearly would be no

more than harmless error, since all the law judge could say about it was that it was useless.

Notably, the form filled out by Dr. Barrett in June 2007 did not purport to assess the plaintiff's condition as of December 31, 2004. Almost two years later, and more than five years after the plaintiff's insured status expired, Dr. Barrett submitted a letter stating, "Mrs. Brandt's physical condition and her physical limitations as of 12/31/04 were comparable to those, which I described on the 6/25/07 summary" (Tr. 161). That belated statement is equally unhelpful since Dr. Barrett did not describe any physical limitations on the June 25, 2007, form.

Dr. Barrett's letter also opines that the plaintiff "was unable to perform any work, eight hours per day five days a week as of 12/21/04" (id.). However, the issue of whether a claimant is disabled is not a medical opinion but is reserved to the Commissioner under the regulations. 20 C.F.R. 404.1527(d); Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 314 (11th Cir. 2007). Since the statement that the plaintiff cannot work is, as a matter of law, not a medical opinion, the law judge was not required to discuss it.

It is appropriate to add that Dr. Barrett's opinion in March 2009 that, as of December 31, 2004, the plaintiff could not perform any work is implausible. In June 2007, Dr. Barrett was unable to provide any functional limitations for the plaintiff. Consequently, he could not plausibly opine two years later that the plaintiff could not perform any work as of December 31, 2004. Notably, Dr. Barrett was the plaintiff's doctor in Michigan, but she moved to Florida in 2001. While she would see Dr. Barrett sporadically after that time, her primary treatment thereafter was from the Watson Clinic and there is no indication that she saw Dr. Barrett between June 25, 2007, and March 2009.

Finally, the plaintiff argues that the law judge erred in the weight given to the opinion of a nonexamining reviewing physician, Dr. John Dawson (Doc. 11, pp. 19-20). On May 11, 2007, Dr. Dawson opined that the plaintiff could perform light work with the exception that she should never climb ladders, ropes, or scaffolding (Tr. 612-19).

In his decision, the law judge indicated that he afforded Dr. Dawson's opinion significant weight "because it is consistent with the objective medical evidence and the opinions and records of the doctors who

had the benefit of actually examining the claimant" (Tr. 22). The law judge then discussed medical evidence that supported this conclusion.

Significantly, the law judge imposed more refined limitations than expressed by Dr. Dawson (compare Tr. 18 with Tr. 612-19). Thus, the law judge's residual functional capacity finding included the following restrictions for sedentary occupations (Tr. 18):

> a sit/stand/walk option permitting no more than five steps from the work station, a stretching maneuver, returning to the work station within one minute, performed not more than five times each hour; occasionally push and pull with her left lower extremity including the operation of pedals, unless the pedal required less than 5 pounds of force; avoid prolonged (6 hours of an 8 hour shift) exposure to temperatures of less than 40 degrees Fahrenheit, along with wetness or humidity; avoid unprotected heights; limited to occupations which allowed brief access to a restroom every 2 to 2 ½ hours during the workday, and which could be performed wearing an incontinence protection pad.

Dr. Dawson had not set forth any comparable limitations.

The plaintiff further asserts that Dr. Dawson did not have access to the medical opinions submitted after his opinion (Doc. 11, p. 19). As the Commissioner points out, Dr. Dawson, who rendered his opinion in May

2007, did in fact review the pertinent medical evidence of record (Doc. 16, p. 9 n.3). Moreover, the law judge himself considered the entirety of the evidence, including those records submitted after Dr. Dawson's opinion to the extent they were even relevant.

In sum, the law judge did not err with respect to the opinions of Dr. Barrett and Dr. Dawson. And he clearly did not commit any reversible error.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 28th day of September, 2012.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE